IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LAVON SLADE, | : |
| Plaintiff, | : |
| v. | : Civil No. 23-3536 (RBK/AMD) |
| HUMANO, LLC, *et al.*, | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant Humano, LLC's ("Humano" or "Defendant") Motion to Dismiss Plaintiff's Complaint ("Compl.") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (ECF No. 11). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

**I.      BACKGROUND**

      **A.      Factual Background**

This dispute arises out of an alleged retaliatory firing in response to Plaintiff Lavon Slade's attempt to claim workers' compensation benefits. In August 2021, Mr. Slade began working for Humano, which provides staffing to warehouses and distribution centers. (ECF No. 2 at 8–15, Compl. ¶¶ 1, 3, 7). Mr. Slade was assigned by Humano to work as a freight handler and pallet jack operator at a warehouse owned and operated by National DCP ("NDCP") in Westampton, New Jersey. (Compl. ¶ 4). Over the course of his employment with Humano, Mr. Slade was twice injured on the job. The first injury occurred on or about June 2, 2022, when the engine of the pallet jack Mr. Slade was operating suddenly stopped, throwing him off the

1

machine. (*Id.* ¶ 8). Mr. Slade tore a ligament in his left shoulder. (*Id.*). He filed a workers' compensation claim and remained out of work for approximately five months. (*Id.* ¶¶ 9, 21).

After his return to full-duty employment at the NDCP warehouse on or about October 22, 2022, Mr. Slade was injured again a month later. (*Id*. ¶¶ 10, 22). On or about November 22, 2022, while Mr. Slade was unloading a case of Coca-Cola from a pallet, he stepped to the side of the pallet and onto a piece of wood that had not been visible from where he was standing. (*Id*. ¶ 11). The wood was stuck through with rusty nails, one of which went through his shoe and into his foot. (*Id.*). Mr. Slade sought medical treatment and received a tetanus shot. (*Id*. ¶ 13). He also reported the incident to his direct supervisor, Teshawn Turner, who told him that he would have to file a workers' compensation claim to get insurance coverage for the shot. (*Id*. ¶¶ 12–13). Mr. Slade took the next day off from work and then had pre-scheduled days off for the Thanksgiving holiday. (*Id*. ¶ 14).

On or about November 28, 2022, Mr. Slade was fired. (*Id*. ¶¶ 15, 26). Mr. Turner forwarded Mr. Slade a screen shot of an email sent by Sarah O'Neill, Humano's Vice President of Human Resources and Administration, directing Mr. Turner as follows:

> After reviewing this file, Lavon failed to follow the clean as you go safety policy, and also failed to follow the do not step on debris policy. Additionally, this is his 2nd safety violation resulting in injury.
>
> Please terminate him for safety policy violation.

(*Id. ¶* 15). Prior to receiving this message, Mr. Slade asserts he was never advised that he had violated a safety policy and was never subject to any disciplinary action by Humano. (*Id*. ¶ 16). Moreover, Mr. Slade claims he was never even advised that such safety policies existed. (*Id*. ¶ 17). He never received copies of such policies or received training on them. (*Id*. ¶¶ 18–19).

2

Mr. Slade brings claims for (1) retaliation in violation of the New Jersey Workers' Compensation Act ("NJWCA"), N.J. Stat. Ann. § 34:15-39.1; and (2) retaliation under *Pierce v. Ortho Pharmaceuticals, Corp.*, 417 A.2d 505 (N.J. 1980) and *Lally v. Copygraphics,* 413 A.2d 960 (N.J. Super. Ct. App. Div. 1980), *aff'd* 428 A.2d 1317 (N.J. 1981) [hereinafter *Lally I* and *Lally II*, respectively]. (Compl. ¶¶ 20–37). As a result of his termination, Mr. Slade claims he suffered injuries including economic hardship, emotional distress, and personal physical injury. (*Id.* ¶¶ 30, 37). He seeks compensatory damages, punitive damages, back pay, and other relief. (*Id.*).

**B.   Procedural Background**

Plaintiff initially filed this action in the Superior Court of New Jersey, Burlington County, on June 1, 2023. (ECF No. 2 at 47). On June 30, 2023, Defendant filed a timely Notice of Removal to the United States District Court for the District of New Jersey ("Notice of Removal"). (ECF No. 1). After the Court granted Defendant an extension of time to respond to the Complaint, Defendant on July 21, 2023, filed the present Motion and a corresponding brief ("Def.'s Br."). (EFC No. 12). Plaintiff opposed the Motion on August 4, 2023 ("Opp. Br."), (ECF No. 14), and Defendant replied on August 14, 2023 ("Def.'s Reply"). (ECF No. 23).

**II.   JURISDICTION**

The Court has subject matter jurisdiction over this case pursuant to the federal diversity and removal statutes. 28 U.S.C. §§ 1332 and 1441. As noted, Defendant timely removed this matter from the Superior Court of New Jersey, Burlington County, on June 30, 2023, alleging jurisdiction under § 1332(a) by claiming complete diversity of citizenship and an amount in controversy exceeding $75,000. (*See generally* Notice of Removal). Defendant alleges that Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of California, and the amount in

3

controversy exceeds $75,000. (Notice of Removal ¶¶ 10, 12, 14–24). Plaintiff does not dispute these points. Because § 1332(a)'s complete diversity and amount-in-controversy requirements have been met, the Court has subject matter jurisdiction to hear this case.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which the court can grant relief. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 679).

## IV.    DISCUSSION

As a preliminary matter, Plaintiff has a "judicially cognizable cause of action" for a violation of N.J. Stat. Ann. § 34:15-39.1 despite language in that code section and its neighboring provision, § 34:15-39.2, that was once considered to preclude such an action. *See Lally I*, 413 A.2d at 962–63.

Further, the Court notes that the elements required to state a claim under each of the two counts in Plaintiff's Complaint are the same. The New Jersey Supreme Court has long recognized "a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful" under N.J. Stat. Ann. §§ 34:15-39.1 and 39.2. *Lally II*, 428 A.2d at 1318. Therefore, if Plaintiff states a statutory claim in Count One under N.J. Stat. Ann. § 34:15-39.1, he necessarily states a common law claim in Count Two under the doctrines laid out in *Lally II*, *id.*, and *Pierce*. 417 A.2d at 512 ("[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy.").[1] The parties agree with this proposition. (Def.'s Br. at 6 ("For the purposes of this motion, the elements that plaintiffs [sic] must prove are the same."); Opp. Br. at 10 (the counts are "substantively the same.")).

Accordingly, the Court's discussion of Plaintiff's statutory claim applies with equal force to his claim under New Jersey common law, and the Court need not independently analyze the latter.

---

[1] Although not relevant at the motion to dismiss stage, the common law cause of action allows plaintiffs to seek compensatory and punitive damages that are not explicitly authorized in the statute. *See Lally I*, 413 A.2d at 963.

5

### A. Count One: Retaliation in Violation of N.J. Stat. Ann. § 34:15-39.1

Following the Third Circuit's three-step test as prescribed in *Santiago*, 629 F.3d at 130, we begin by identifying the elements required to state a claim under § 34:15-39.1 of the NJWCA. The Act makes it unlawful for an employer "to discharge or in any manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation from such employer." N.J. Stat. Ann. § 34:15-39.1. To state a claim for retaliatory discharge, "the employee must prove that: (1) he or she attempted to make a claim for workers' compensation benefits; and (2) he or she was discharged for making that claim." *Morris v. Siemens Components, Inc.,* 928 F.Supp. 486, 493 (D.N.J. 1996) (citing *Lally II*, 428 A.2d 1317).[2]

To satisfy the first element, a plaintiff is "not required to show that he physically filed a claim petition." *Cerracchio v. Alden Leeds, Inc.*, 538 A.2d 1292, 1296 (N.J. Super. Ct. App. Div. 1988); *see also Carter v. AFG Industries Inc.*, 782 A.2d 967, 971 (N.J. Super. Ct. App. Div. 2001). Rather, a plaintiff need only show that he "attempted" to make a claim. N.J. Stat. Ann. § 34:15-39.1. This showing can be made, for example, where an employee notifies his employer of his injury and inquires into the procedure for claiming benefits. *See Cerracchio*, 538 A.2d at 1297.

---

[2] *Morris* speaks to the elements needed to establish a *prima facie* case for retaliatory discharge. *Id*. The opinion in *Morris*, however, decided a motion for summary judgment. *Id*. at 489. Here, by contrast, "a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (assessing claims of disparate treatment and retaliation under Title VII and Pennsylvania state law). The pleading standard under Federal Rule of Civil Procedure 8 "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id*. at 789 (internal quotation marks and citations omitted). In any case, the parties agree that these are the required elements to state a claim. (Def.'s Br. at 6 (citing *Morris*, 928 F.Supp. at 493); Opp. Br. at 10 (citing model jury charge and case law articulating same elements)).

To satisfy the second element—that the employee was discharged for making a claim—the plaintiff must demonstrate, first, that he was discharged by his employer, and second, that a causal nexus exists between his claim and the retaliatory action. "In analyzing a retaliatory discharge claim under New Jersey law, courts look to correlative federal law to supply the relevant standards for evaluating the claim." *Craytor v. CTOS, LLC*, Civ. No. 20-19875, 2023 WL 3735883, at *7 (D.N.J. May 31, 2023) (quotation marks omitted) (citing *Morris*, 928 F.Supp. at 493). "Federal courts have generally recognized three ways in which a plaintiff may establish causation in retaliation actions." *Id*. First, a plaintiff can show "an unusually suggestive temporal proximity" between the protected activity and the alleged retaliatory action. *Id*. Second, a plaintiff can show that the employer engaged in a pattern of antagonism in the period between the protected activity and the alleged retaliatory action. *Id*. Third, a plaintiff can point to evidence that, when viewed "as a whole," suggests the employer had a retaliatory animus when taking the alleged retaliatory action. *Id*.

The Third Circuit has held that gaps of two or ten days between the protected activity and the alleged retaliatory action were short enough to constitute "an unusually suggestive temporal proximity" supporting a showing of causation. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (ten days).[3] Other district courts in this Circuit have followed suit. *See, e.g.*, *Syder v. Express Servs.*,

---

[3] Defendant cites *Morris*, 928 F.Supp. at 493, for the proposition that "[a]lthough the timing of a discharge may be significant, it, alone, cannot raise an inference of causation sufficient to establish a *prima facie* case of retaliation." (Def.'s Br. at 7). As Plaintiff correctly points out, however, the court in *Morris* was analyzing a motion for summary judgment, not whether the plaintiff had met the more lenient Rule 8 pleading standards. (Opp. Br. at 15). In any case, the Third Circuit has more recently stated otherwise. *See Shellenberger*, 318 F.3d at 189 ("[W]e have held that 'temporal proximity between the protected activity and the termination is [itself] sufficient to establish a causal link.'") (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)).

*Inc.*, Civ. No. 20-11013, 2022 WL 577964, at *4 (D.N.J. Feb. 24, 2022) (two days); *Gibbs v. Brennan*, Civ. No. 18-14410, 2021 WL 3661277, at *17 (D.N.J. Aug. 18, 2021) ("about a week").

The Third Circuit has also provided guidance as to when causation can be inferred from the record as a whole. Evidence that courts can look to include "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). In one case, for example, the Third Circuit held that the behavior of the plaintiff's supervisor, the timing of plaintiff's termination, and inconsistencies in her employer's explanation for her termination were sufficient to show causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000); *see also Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 856–57 (D.N.J. Nov. 14, 2019) (finding causation based on inconsistencies in the employer's explanations for plaintiff's discipline).

At the second step under *Santiago*, we look at the Complaint's allegations and weed out the conclusory statements from the actual, well-pleaded facts. Here, Plaintiff alleges numerous well-pleaded facts. Plaintiff alleges that he worked for Defendant at the NDCP warehouse starting in August 2021, (Compl. ¶¶ 1, 4, 7); suffered a workplace injury in June 2022, (*id*. ¶ 8); filed a workers' compensation claim in connection to that injury and remained out of work for about five months, (*id*. ¶ 9); returned to work in October 2022, (*id*. ¶ 10); suffered a second workplace injury on November 22, 2022, (*id*. ¶ 11); sought medical treatment and received a tetanus shot, (*id*. ¶ 13); reported the injury to his supervisor, who told Plaintiff he would need to file a workers' compensation claim to get insurance coverage for the shot, (*id*. ¶¶12-13); took the

8

next day off from work and then had pre-scheduled days off for the Thanksgiving holiday, (*id*. ¶ 14); and was fired upon his return to work on November 28, 2022—six days after his second injury. (*Id*. ¶ 15). Plaintiff further alleges that the reason given for his termination, by Defendant's Vice President of Human Resources and Administration, was "for safety policy violation" following Defendant's "2nd safety violation resulting in injury." (*Id*.). Plaintiff claims that prior to his termination, not only had he never been informed that he had violated a safety policy, but also he had never been informed of the existence of such policies or received training on them. (*Id*. ¶¶ 16–19). None of these statements is conclusory; all are well-pleaded factual allegations.

Finally, at the third step under *Santiago*, we find that Plaintiffs' Complaint contains enough well-pleaded factual allegations to plausibly give rise to an entitlement for relief against Defendant. As an initial matter, Defendant does not dispute that Plaintiff filed a workers' compensation claim after his first injury and attempted to make a similar claim after his second injury. (*See* Def.'s Br. at 6 ("[T]here is no dispute that Plaintiff made not one but two workers' compensation claims.")). Therefore, even though Plaintiff does not allege he physically filed a claim petition after his second injury, the Court finds that he attempted to make a claim within the meaning of N.J. Stat. Ann. § 34:15-39.1 when he notified his supervisor of his injury and was told he would need to file a workers' compensation claim to obtain insurance coverage for his tetanus shot. *See Cerracchio*, 538 A.2d at 1296–97. Similarly, Defendant does not dispute that Plaintiff was terminated. (*See, e.g.*, Def.'s Br. at 2). Thus, the only contested element is whether Plaintiff has plausibly alleged that he was fired *because* he filed the claims. Defendant asserts that "there is simply no evidence—not a scrap of documentation or even an allegation of a

9

statement—that would indicate that his employment was terminated as a result of either of those claims." (*Id*.).

Contrary to Defendant's assertion, the Court finds that Plaintiff's well-pleaded factual allegations are sufficient to establish a causal nexus between the claims and his termination. In fact, Plaintiff can establish causation in two different ways. First, he can show "an unusually suggestive temporal proximity" between his second claim and he termination. *See Craytor*, 2023 WL 3735883, at *7. Six days separated Plaintiff's second injury, after which his supervisor advised him to make a workers' compensation claim, and his termination. Excluding the intervening Thanksgiving holiday and weekend, the gap between the events appears even shorter: only one to three business days. Six days is fewer than the ten days that the Third Circuit has held is a sufficiently short span to establish an unusually suggestive temporal proximity. *See Shellenberger*, 318 F.3d at 189. Further, temporal proximity alone is enough to establish a causal link. *Id*. Therefore, Plaintiff has sufficiently pleaded the causality element of his retaliation claim.

In the alternative, Plaintiff alleges enough well-pleaded factual allegations such that causation can be inferred from the record "as a whole." *See Craytor*, 2023 WL 3735883, at *7. Accepting Plaintiff's factual allegations as true, as we must at the motion to dismiss stage, Defendant's stated reason for terminating Plaintiff appears implausible. In the email directing Plaintiff's supervisor to fire Plaintiff, Defendant's Vice President of Human Resources and Administration stated that Plaintiff committed two safety violations resulting in injury and that he should be fired "for safety policy violation." (Compl. ¶ 15). This explanation seems implausible, however, considering Plaintiff's assertion that, prior to his termination, he was never informed he had violated a safety policy or that such safety policies existed. Defendant

may yet be able to refute Plaintiff's assertions, but that is for a later stage in the litigation. For now, the Court finds that the apparent implausibility of Defendant's stated reason for terminating Plaintiff, combined with the timing of Plaintiff's termination, permits an inference of causation.

Therefore, Plaintiffs' Complaint contains enough well-pleaded factual allegations to plausibly give rise to an entitlement for relief under § 34:15-39.1 of the NJWCA. Defendant's Motion to Dismiss Count One is denied.

### B. Count Two: Retaliation in Violation of New Jersey Common Law

As discussed, because Plaintiff states a claim under N.J. Stat. Ann. § 34:15-39.1, he necessarily does so under New Jersey common law as well. Defendant's Motion to Dismiss Count Two is likewise denied.

### V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 11) is **DENIED**. An Order follows.

Dated:   March 14, 2024                                           /s/ Robert B. Kugler
                                                                  ROBERT B. KUGLER
                                                                  United States District Judge